IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION - ST. LOUIS
BEFORE THE HONORABLE RONNIE L. WHITE
DISTRICT JUDGE

UNITED STATES OF AMERICA, )
)
Government, ) Case Number
vs. ) 4:21-CR-00013-RLW-3
)
DEDRICK DESHON JORDAN, )
)
Defendant. )

===============================================================

- CHANGE OF PLEA HEARING -

AUGUST 21ST, 2023

===============================================================

APPEARANCES

For the Government:
Paul D'Agrosa, AUSA
U.S. ATTORNEY'S OFFICE
111 South 10th Street
St. Louis, MO 63102

For the Defendant:
Joseph M. Hogan, Esq.
JOSEPH M. HOGAN, ATTORNEY AT LAW
7710 Carondelet, #404
Clayton, MO 63105

Stenographically Reported & Produced by:
LINDA NICHOLS, RDR, CRR
Official Court Reporter
United States District Court
Eastern District of Missouri
111 South 10th Street, Third Floor
St. Louis, MO 63102

- CHANGE OF PLEA HEARING -

AUGUST 21ST, 2023

PROCEEDINGS IN OPEN COURT
AT 1:00 P.M.:

THE COURT: Good afternoon, counsel.

MR. D'AGROSA: Good afternoon, Your Honor.

MR. HOGAN: Good afternoon, Your Honor.

THE COURT: Are you ready to proceed?

MR. HOGAN: Yes, Your Honor.

MR. D'AGROSA: Yes.

THE COURT: This is *The United States vs. Brendon Darnell Thomas, et al.* This Defendant is Dedrick Deshon Jordan. The Cause Number is 4:21-CR-13. The Government is represented by attorney Paul D'Agrosa, defense counsel is Mr. Joe Hogan, and Mr. Jordan is here in person.

Mr. Hogan, do you have an announcement on behalf of your client?

MR. HOGAN: Yes, Your Honor. Pursuant to plea negotiations with the Government, my client has authorized me to withdraw his former plea of not guilty and enter a plea of guilty to the lesser-included offense in Count One, Your Honor.

THE COURT: Mr. Jordan, would you like to plead guilty this afternoon?

THE DEFENDANT: Yes, sir.

THE COURT: Before I accept your guilty plea, there are

some questions that I must ask of you and before I ask you those questions, I'm going to have you placed under oath.

Once you have sworn to tell the truth, your answers will be subject to penalties of perjury. That means you could be prosecuted if you are untruthful. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Swear him in.

(Defendant sworn.)

THE COURT: How old are you?

THE DEFENDANT: 34.

THE COURT: How far did you go in school?

THE DEFENDANT: High school.

THE COURT: Did you graduate?

THE DEFENDANT: Yeah.

THE COURT: Are you currently under the care of a physician or a psychiatrist?

THE DEFENDANT: No, sir.

THE COURT: Do you take any medicines on a regular basis?

THE DEFENDANT: No, sir.

THE COURT: Have you had any drugs or alcohol in the last 24 hours?

THE DEFENDANT: No, sir.

THE COURT: Are you under the influence of anything now?

THE DEFENDANT: No, sir.

THE COURT: Do you understand what's happening and why you're here this afternoon?

THE DEFENDANT: Yes, sir.

THE COURT: Does either counsel for the Government or counsel for the Defendant have any doubt as to the Defendant's competence to enter a plea at this time?

MR. D'AGROSA: I do not, Your Honor.

MR. HOGAN: No, Your Honor.

THE COURT: Mr. Jordan, you have been charged in Count One by indictment. It says, Beginning at an exact time unknown to the grand jury but including January, 2019, and continuing thereafter to the date of this indictment, in the Eastern District of Missouri and elsewhere, the Brendon Darnell Thomas defendants and Dedrick Deshon Jordan, the defendants herein, did knowingly and intentionally conspire, combine, confederate and agree with one or more other persons, known and unknown to the grand jury, to commit the following offenses against the United States, to wit: To distribute and possess with the intent to distribute a mixture or substance containing a detectible amount of methamphetamine, a Schedule II controlled substance.

With respect to each defendant, the amount involved in the conspiracy attributable to each of them as a result of their own conduct and the conduct of other co-conspirators reasonably

foreseeable to them is 50 grams or more of actual methamphetamine.

Do you understand the charge against you?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that this is a felony charge?

THE DEFENDANT: Yes, sir.

THE COURT: You're appearing this afternoon with your attorney, Mr. Hogan. Have you had enough time to discuss your case with him?

THE DEFENDANT: Yes, sir.

THE COURT: Are you satisfied with his representation of you in this case?

THE DEFENDANT: Yes, sir.

THE COURT: Is there anything you felt he should have done but did not do in representing you here?

THE DEFENDANT: No, sir.

THE COURT: I now need to talk to you about some of your trial rights. Do you understand you do not have to plead guilty today?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that you have a right to plead not guilty and go to trial?

THE DEFENDANT: Yes, sir.

THE COURT: If you plead guilty, you'll be giving up

the right to trial and some other rights and I just want to make sure you understand what you're giving up by pleading guilty.

Do you understand that if you plead not guilty, you would be entitled to a speedy and public trial by a judge or by a jury?

THE DEFENDANT: Yes, sir.

THE COURT: At that trial you would be presumed innocent and the Government would have to prove you guilty by competent evidence and beyond a reasonable doubt. You would not have to prove you are innocent. The burden would always be on the Government to try to prove otherwise. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: The Government would try to do that by bringing in witnesses who would testify in your presence. In other words, you would hear what those witnesses had to say.

Your attorney could then cross examine the Government's witnesses, could object to the Government's evidence and could offer evidence and subpoena witnesses on your behalf. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: You could testify if you wanted to but you do not have to testify, and if you decided not to testify, there could not be any suggestion made to the jury or any inferences drawn by them that you were guilty because you didn't take the

stand. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that those are some of the rights you would have if you pleaded not guilty and went to trial?

THE DEFENDANT: Yes, sir.

THE COURT: If you plead guilty and I accept your plea, you'll be giving up the right to trial and the other rights I've just described. In other words, there won't be any trial and a judgment of guilty will be entered against you just the same as if you had been convicted by a jury. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Has anyone threatened you or in any way forced you to plead guilty today?

THE DEFENDANT: No, sir.

THE COURT: The lawyers have given me a document that is called the Guilty Plea Agreement. It has your name in the caption. Do you happen to have a copy of it in front of you?

THE DEFENDANT: Yes, sir.

THE COURT: On the last two pages there are three signatures. On page 12 at the bottom is the signature of Mr. D'Agrosa, on page 13, the second signature is the signature of Mr. Hogan, and then there's a signature above where your name is typed, on the same page. Is that your signature?

THE DEFENDANT: Yes, sir.

THE COURT: Did you sign this document?

THE DEFENDANT: Yes, sir.

THE COURT: Did you read it and discuss it with Mr. Hogan before you signed it?

THE DEFENDANT: Yes, sir.

THE COURT: Is everything in it true to the best of your knowledge and understanding?

THE DEFENDANT: Yes, it is.

THE COURT: Is there anything you disagree with or don't understand?

THE DEFENDANT: No, sir.

THE COURT: Have there been any other promises made to you or agreements entered into by you related to your guilty plea that aren't written down in this document?

THE DEFENDANT: No, sir.

THE COURT: I want you to look at the first page of the guilty plea. At the bottom, section 2, it says, Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the Defendant's voluntary plea of guilty to the lesser-included offense in Count One of the indictment, the United States agrees to dismiss Count Seven at the time of sentencing.

The United States further agrees that no further federal prosecution will be brought in this district relative to the Defendant's violations of federal law known to the United

States at this time arising out of the events set forth in the indictment.

Do you understand that this is your agreement with the Government?

THE DEFENDANT: Yes, sir.

THE COURT: On page 2 is section 3. It says, Elements. As to Count One, the elements of the crime are: First, two or more people reached an agreement to commit the crime of distributing and possessing with the intent to distribute methamphetamine; Second, the Defendant voluntarily and intentionally joined in the agreement; Third, at the time the Defendant joined in the agreement, the Defendant knew the purpose of the agreement.

Do you understand the elements of the charge against you?

THE DEFENDANT: Yes, sir.

THE COURT: I'm going to ask Mr. D'Agrosa to state what facts the Government intends to prove beyond a reasonable doubt if this case were to go to trial. I want you to listen carefully and I'll have additional questions.

Mr. D'Agrosa?

MR. D'AGROSA: Thank you, Your Honor.

THE COURT: Sure.

MR. D'AGROSA: This matter relates to a conspiracy that the grand jury charges and we would prove at trial began

sometime in January of 2019 until the date of the indictment, which was January of 2021. The conspiracy involved Brendon Thomas, Joe Holliman, Dedrick Jordan, Terry Williams, and others who agreed and conspired to distribute methamphetamine here in the Eastern District of Missouri and elsewhere.

Jordan, Williams and Clifford Davis were connected to a source of supply in the Los Angeles, California, area. That's located in the Central District of California. Holliman and Jordan were primarily responsible for arranging the supply of methamphetamine.

Thomas, in turn, supplied the narcotics to various street-level distributors here in the Eastern District of Missouri, and those various distributors are listed both in the indictment and in the Stipulation of Facts. At other times some of these people also supplied methamphetamine to Thomas.

The proceeds of the sale of the methamphetamine -- and this relates to Count Seven which we have agreed to dismiss -- the proceeds were converted from U.S. currency into money orders and Money Grams in order to disguise and conceal the source of the money. This currency represented the unlawful proceeds from the sale of methamphetamine and other illegal narcotics.

Those proceeds were electronically transferred utilizing various cash applications such as Square and also Walmart money transfers.

This investigation was primarily conducted by the DEA,

Homeland Security, the United States Postal Inspection Service, and the Jefferson County Municipal Enforcement Group. Investigation revealed that Thomas Holliman and this Defendant, Mr. Jordan, maintained a separate residence here in the Eastern District of Missouri. They utilized those residences to store narcotics, to receive narcotics, and to store the cash proceeds from the sale of narcotics.

The methamphetamine was shipped from Los Angeles to the Eastern District of Missouri, first through the mail and then via couriers who drove vehicles with hidden compartments. The drugs were stored here and then distributed to street-level distributors in the St. Louis metropolitan area and elsewhere.

This investigation utilized techniques such as surveillance, informants, a Title III wiretap on four different telephones, GPS tracking devices, precision location warrants, and residential search warrants.

During the investigation, it was revealed that packages were being mailed from L.A. and destined for St. Louis. Some of those packages were interdicted by the Postal Inspection Service. For example, in February of 2020 and then in July of 2020 two packages were seized containing 1,322 grams of crystal methamphetamine with a purity of at least 97 percent. Those packages also contained marijuana, which was not charged in this indictment.

Another example of the source of supply sending drugs

was a vehicle stop on April 18th of 2020. Defendants Davis and Flores-Cervantes were stopped in Phelps County, Missouri. They were driving a vehicle that was owned by this Defendant, Mr. Jordan. That vehicle had been tracked with a court-ordered GPS tracking device from St. Louis for the Los Angeles, California, area and then back to Missouri. That vehicle was stopped and searched. The hidden compartment was found. Inside of that compartment was a loaded pistol and 11.97 kilograms of crystal meth which had a purity of 94 percent.

On June 18th, investigators executed three residential search warrants. These were at the residences of Defendants Thomas, Jordan and Holliman. At Jordan's residence investigators seized $129,776 in currency, 190 grams of 97 percent pure methamphetamine and a digital scale. Investigators also seized evidence of the conspiracy at both Thomas and Holliman's residences.

Your Honor, in summary, from January of 2019 until the date of the indictment, the conspiracy was responsible for distributing in excess of 50 grams of actual methamphetamine. The total seizure of methamphetamine during this investigation exceeded 15 kilograms.

As to Mr. Jordan, the precise amount of methamphetamine for which he is responsible cannot be calculated precisely but the parties have stipulated and agreed, for sentencing purposes, that this Defendant is responsible for at least 1.5 but less

than 4.5 kilograms of actual methamphetamine.

Thank you, Your Honor.

THE COURT: Mr. Jordan, did you go over those facts carefully with Mr. Hogan?

THE DEFENDANT: Yes, sir.

THE COURT: Is there any disagreement about them?

THE DEFENDANT: No, sir.

THE COURT: Did you do those things that were just stated for the record?

THE DEFENDANT: Yes, sir.

THE COURT: On page 6 is section 5. It says, Statutory Penalties. The Defendant fully understands that the maximum possible penalty provided by law for the crimes to which the Defendant is pleading guilty is imprisonment of not less than five years nor more than 40 years, a fine of not more than $5 Million Dollars, or both such imprisonment and fine. The Court shall also impose a period of supervised release of not less than five years.

Do you understand the statutory penalties that you are exposed to for this charge?

THE DEFENDANT: Yes, sir.

THE COURT: Your sentence will also be affected by the Sentencing Guidelines. The Guidelines are a set of rules that apply points to different things and when we apply them to your case, we get a result called the Sentencing Guidelines range.

On page 6 and page 7 is section 6. This section says that you and the Government have agreed to the following Sentencing Guidelines. I want you to listen and I will ask Mr. Hogan to outline or summarize those agreements.

Mr. Hogan?

MR. HOGAN: Thank you, Your Honor.

THE COURT: Sure.

MR. HOGAN: Your Honor, the base level offense in this case is a level 36, as found in Section 2D1.1(c)(i). As Mr. D'Agrosa previously stated, while it is impossible to calculate the exact amount, the parties have agreed to hold Mr. Jordan responsible for at least 1.5 but less than 4.5 kilograms of actual methamphetamine.

Your Honor, there are no Specific Offense Characteristics known to the parties which would add any additional points.

And, Your Honor, because of his timely notice of notifying the Government of his intent to enter a plea of guilty, Mr. Jordan should receive three points, two points plus another, for a total of three reduced from his sentence for Acceptance of Responsibility, which would give an estimated Total Offense Level of 33, Your Honor.

THE COURT: Mr. D'Agrosa, is that your understanding of how the Guidelines might apply to this case?

MR. D'AGROSA: Yes, Your Honor.

THE COURT: Under Local Rule 13.05 it is the procedure of this Court to hold a bench conference in every plea and every sentencing hearing. We will now conduct the bench conference and this portion of the transcript of this hearing will be filed under seal.

Counsel, if there is no objection, we can hold the conference in open court.

MR. D'AGROSA: I don't have any objection, Your Honor.

MR. HOGAN: For the record, Your Honor, I would state that there is no one in the courtroom except the parties.

THE COURT: Well, let's hold on a minute.

Please approach sidebar.

MR. D'AGROSA: Yes, let's do sidebar.

**SEALED SIDEBAR PROCEEDINGS:**

(*Pursuant to Local Rule 13.05 a conference was held on the record and placed under Seal.*)

**PROCEEDINGS RETURNED TO OPEN COURT:**

THE COURT: Mr. Jordan, on page 8 is section 7(A)(ii). It says, Sentencing Issues. In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and after determining a Sentencing Guidelines range, sentences the Defendant within or below that range, then as part of this agreement the Defendant hereby waives all rights to appeal all sentencing issues other than criminal history but

only if it affects the Base Offense Level or Criminal History Category.

Similarly, the Government hereby waives all rights to appeal all sentencing issues other than criminal history provided the Court accepts the plea, the agreed Total Offense Level, and sentences the Defendant within or above that range.

Mr. Jordan, this basically means that if you were to receive a sentence within or below the Guidelines range, you would waive all rights to appeal the sentence; and if you were to receive a sentence within or above the Guidelines range, the Government would waive all rights to appeal the sentence. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Next on page 8 is section 7(B). It says you're giving up your right to file a habeas corpus or a post-conviction motion, which is a motion where you could come back to me and say you thought your rights had been violated in these proceedings. You're giving up those rights unless you later find out something you believe to be prosecutorial misconduct or ineffective assistance of counsel.

Do you understand what you're giving up under section 7(B)?

THE DEFENDANT: Yes, sir.

THE COURT: On page 9 is section 8. Parts (A) and (B) say that you will provide information to the probation office

and that they can share that information with the United States Attorney's Office, and that you understand nothing in this document limits the rights of the United States to bring civil, tax, immigration, deportation or administrative actions against you if they thought they had a right to do so. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Also on page 9 is section 8(C). This section talks about supervised release and points out that if you were to violate the terms of your supervised release, I could revoke your release and send you to prison. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Finally on page 9 is section 8(D). There is a special assessment of $100 that I must impose as part of your sentence.

On page 10 is section 8(G). This section says you're agreeing to forfeit any property that might have been seized by law enforcement during the investigation. So if they seized any drugs, money, guns or other property, you will not be able to get that back. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Also on page 10 is section 9, Acknowledgment and Waiver of the Defendant's Rights. This section talks about the rights we've been going over this

afternoon. Do you have any questions about any of those rights?

THE DEFENDANT: No, sir.

THE COURT: At the bottom of page 11 is section 10. This section says that you're entering voluntarily into both the guilty plea and the guilty plea agreement. Are you doing this of your own free will?

THE DEFENDANT: Yes, sir.

THE COURT: On page 12 is section 11. This section points out that if you commit a crime or do anything else to violate the terms of this agreement, the United States Attorney does not have to follow the agreement and they can ask for a higher sentence. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Next on page 12 is section 12, No Right to Withdraw Guilty Plea. Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the Defendant understands that there will be no right to withdraw the plea entered under this agreement except where the Court rejects those portions of the plea agreement which deal with charges the Government agrees to dismiss or not to bring.

Do you understand section 12, No Right to Withdraw this Guilty Plea?

THE DEFENDANT: Yes.

THE COURT: Then let me ask you formally and for the record, how do you plead to the lesser-included offense in

Count One of the indictment? Guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: Okay. I will accept your plea. I find that you're competent to enter the plea, you know your rights, and you're doing this voluntarily. I also find that the plea has a factual basis that contains all the elements of the crime to which you're pleading guilty so I will accept your guilty plea.

I will set your sentencing for Tuesday, November 21st, 2023, at 11:00 a.m. in courtroom 10 south.

Objections to the Presentence Report will be due three weeks before, or on Tuesday, October 31st, 2023.

Mr. D'Agrosa, is there anything else from the Government?

MR. D'AGROSA: There is not, Your Honor. Thank you.

THE COURT: Mr. Hogan?

MR. HOGAN: No, Your Honor. Thank you.

THE COURT: Mr. Jordan, you will be allowed to remain on bond pending sentencing. We'll see you back here in November.

MR. D'AGROSA: Thank you, Your Honor.

THE COURT: Thank you.

- RECESS AT 1:23 P.M. -

- REPORTER'S CERTIFICATE -

I, Linda C. Nichols, Registered Diplomate Reporter and Certified Realtime Reporter, do hereby certify that I am a duly appointed Official Court Reporter for the United States District Court, Eastern District of Missouri, and that the foregoing is a true and accurate reproduction of the Change of Plea hearing on August 21st, 2023, in the matter of:

UNITED STATES OF AMERICA

vs.

DEDRICK DESHON JORDAN

Case Number 4:21-CR-00013-RLW-3

I further certify that this transcript consists of pp. 1-20 inclusive.

Dated: April 5th, 2024.

\s\ Linda Nichols
Linda Nichols, RDR, CRR
Official Court Reporter
United States District Court
Eastern District of Missouri