IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION - ST. LOUIS
BEFORE THE HONORABLE RONNIE L. WHITE
DISTRICT JUDGE

UNITED STATES OF AMERICA, )
)
Government, ) Case Number
vs. ) 4:21-CR-00013-RLW-3
)
DEDRICK DESHON JORDAN, )
)
Defendant. )

==============================================================

- SENTENCING HEARING -

MARCH 26TH, 2024

==============================================================

APPEARANCES

For the Government:
Paul D'Agrosa, AUSA
U.S. ATTORNEY'S OFFICE
111 South 10th Street
St. Louis, MO 63102

For the Defendant:
Joseph M. Hogan, Esq.
JOSEPH M. HOGAN, ATTORNEY AT LAW
7710 Carondelet, #404
Clayton, MO 63105

Stenographically Reported & Produced by:
LINDA NICHOLS, RDR, CRR
Official Court Reporter
United States District Court
Eastern District of Missouri
111 South 10th Street, Third Floor
St. Louis, MO 63102

- SENTENCING HEARING -

MARCH 26TH, 2024

PROCEEDINGS IN OPEN COURT
AT 11:30 A.M.:

THE COURT: Counsel, are you ready to proceed?

MR. D'AGROSA: Yes, Your Honor.

MR. HOGAN: Yes, Your Honor.

THE COURT: This is *The United States vs. Dedrick Deshon Jordan*. The cause number is 4:21-CR-013. The Government is represented by Assistant United States Attorney Paul D'Agrosa, defense counsel is Joe Hogan, and Mr. Jordan is here.

Sir, on August 21st, 2003, you pled guilty to the charge of conspiracy and possession with the intent to distribute methamphetamine. Do you remember that?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand you're here this morning for your sentencing?

THE DEFENDANT: Yes, sir.

THE COURT: Before we proceed with the sentencing, I just want to rule on this Motion to Travel. The time has passed, so it's moot.

MR. HOGAN: Yes, Your Honor.

THE COURT: Mr. Jordan, did you have an opportunity to read and discuss your Presentence Report with Mr. Hogan?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. D'Agrosa, did you read it?

THE DEFENDANT: I did, Your Honor.

THE COURT: Are there any objections to the factual accuracy of the report?

MR. HOGAN: No, Your Honor.

MR. D'AGROSA: No, Your Honor.

THE COURT: Are there any objections to the probation officer's application of the Sentencing Guidelines?

MR. D'AGROSA: Not from the United States, Your Honor, no.

MR. HOGAN: No, Your Honor.

THE COURT: There being no objections to the factual statements contained in the Presentence Report, the Court will adopt these statements as its Findings of Fact.

The Court determines that the applicable Guidelines are: Total Offense Level of 33, Criminal History Category is VI. The Guideline provisions call for a sentence of 235 to 293 months in prison.

Under Local Rule 13.05 it is the procedure of this Court to hold a bench conference in every plea and every sentencing hearing. We will now conduct the bench conference and this portion of the transcript of this hearing will be filed under seal.

Counsel, if there is no objection, we can hold the conference in open court.

MR. D'AGROSA: No objection, Your Honor.

MR. HOGAN: No objection, Your Honor.

**SEALED COURT PROCEEDINGS:**

*(Pursuant to Local Rule 13.05*
*a conference was held on the record*
*and placed under Seal.)*

**PROCEEDINGS RETURNED TO OPEN COURT:**

THE COURT: Does either party know of any reason why this Court should not now proceed with the imposition of sentence?

MR. D'AGROSA: No, Your Honor.

MR. HOGAN: No, Your Honor.

THE COURT: Mr. Hogan, do you wish to make a statement or present any information in mitigation of the sentence?

MR. HOGAN: Yes, Your Honor.

Your Honor, first, with the Court's permission -- I've asked this of Mr. D'Agrosa already -- my client's mother texted me a letter today so I didn't have time to file it. As the Court is aware, Your Honor, I have scanned and downloaded a sentencing letter that my client wrote and I filed it as an exhibit.

THE COURT: I have it and I have read it.

MR. HOGAN: Thank you, Your Honor.

I will now read his mother's letter into the record, Your Honor. I'm sorry. It's an email. This is dated today,

Your Honor.

Dear Honorable Judge, I am writing this letter to ask for leniency in the sentencing of my son, Dedrick Jordan, who is scheduled to be sentenced in your court today, Your Honor.

I'm asking that your sentence be merciful and not punitive. My son, Dedrick Jordan, has obtained to work hard, seeking full-time. My son has obtained full-time employment. He works for his family and five children, giving all five of his children and I the best support possible. Our family and Dedrick's children love him so much.

I realize my son has made mistakes in his life. I've also watched and witnessed my son make a total change in his life. I've seen many aspects of my son raising his children and I think of raising Dedrick as a single parent, working and furthering my education while reinforcing the importance for my two sons, Dedrick being the oldest, to always strive to be the best person in life in spite of all the negative life challenges and obstacles. You have to keep going, never giving up on his goals and dreams.

As a teenager growing up, and as a young a teenager without an active father in his life, that impacted him very negatively and caused him to made make bad choices and to succumb to peer pressure and the environment in which we lived. We realize children are more impacted by their peers and trying to make people not feel rejected.

Dedrick has been punished for his mistakes as a child. Dedrick did obtain his high school diploma in general education while in juvenile custody. Dedrick has always been a very ambitious person. I see many aspects of his positive personalities in his struggles. Dedrick can be described as kind, dependable, and well-regarded amongst his family, children, peers, and others.

The transgressions of the crime should not be the only factor looked upon in this case, Your Honor. I hope you will please consider Dedrick Jordan's efforts in his job, his community, and loving his family, and me, and his five children and their lives. They will all be impacted by the sentence. We as a family depend on Dedrick so much. Please consider rehabilitation, Your Honor.

Your Honor, that's from Dedrick's mother.

As the Court is aware, Your Honor, I filed a six-page Sentencing Memorandum and, Your Honor, for clarity purposes I broke it into three different sections: juvenile convictions, unwanted sentencing disparities, and offender characteristics.

Your Honor, I'll first start off with juvenile convictions.

THE COURT: Keep in mind I've read it.

MR. HOGAN: Yes, Your Honor.

Your Honor, I will point out that it's surprising, as a criminal defense lawyer, to find an Eighth Circuit case which

actually supports a criminal defendant and bolsters your argument. I'm not used to that, Your Honor.

But in this case, the *Feemster* case, I will point out does permit you to do what I'm asking. It's the *Feemster* case, and I highlighted it and put it in bold. He had two convictions when he was a juvenile which raised this person's sentence from a mandatory minimum of 120 to 360 months to life.

So as we know in this case, Your Honor, Mr. Jordan's sentence is based really upon his convictions when he was 15 years old and 16 years old. A kid. A child not even old enough for a driver's license. That's why they put him at 235 to 293. That is a correct application of the Guidelines but 3553(a), the Supreme Court and the Eighth Circuit allow you to give a sentencing variance.

I believe his proper Guideline range, Your Honor, should be 168 to 210 months and I'm asking you to have a downward departure from there. I pointed out Mr. Williams, who had approximately 450 pounds of methamphetamine, which is in the Presentence Investigative Report, got a sentence of 120 months and Joseph Holliman, who was one of the ringleaders, got a sentence of 85 months.

Your Honor, I'm asking that the Court consider a Guideline range of 168 to 210 as the proper Guideline range, and to grant a downward variance from there under the factors in 3553(a) to whatever reduction the Court deems appropriate,

Your Honor, in light of everything I've mentioned in my sentencing argument, in my Sentencing Memorandum, and the legal bases cited in support of it.

I also believe, Your Honor, my client, who has filed a letter, would like to make a statement to the Court.

THE COURT: Mr. Jordan?

THE DEFENDANT: Yes, sir.

THE COURT: Would you like to make a statement?

THE DEFENDANT: Yes, sir.

THE COURT: Proceed.

(Defendant approached the podium.)

THE DEFENDANT: First of all, sir, I want to say thank you for allowing me to speak.

Throughout this process it's been like real stressful and terrifying. I understand that I came across some mistakes that I had no business like being a part of. I fully regret those and I wish it never ever took place. It impacted me and it impacted my family, and more than anything it impacted my kids. My kids has always been my priority no matter what. And as time goes on, they're able to see like me not being there when stuff like this occurs, and it bothers me.

All I want to do is just make sure they get the dad that I never got. I try to provide for them the best that I can. I try to be there physically for them as much as possible, and I just want to see them happy.

I'm just asking for a chance, sir. As a kid I stumbled a lot and it was only because of my survival. My world was different from a lot of kids. And I'm not using it as an excuse. I'm just stating the facts. I had to survive. I made mistakes that eventually cost me throughout my life but as I continue to go on, I have to like, it seems like I have to continue to pay for the mistakes that I've already paid for. I'm asking you to give me the benefit of the doubt of who I am today. Not who I was.

I made a complete change from the things that I used to do to the things I do now. This entire time I've been on this monitor I've had two jobs to support me and my family, not because that's something that I had to do but it also taught me certain things that I didn't know.

I want to be able to be a regular citizen who gets up and has a full responsibility in a right and positive way. I want to be a role model to my kids as well as other kids. I don't want to be a statistic that everybody just sees you come from a specific area and they think that you have to fall in line with the wrong crowd.

I want to be somebody that comes from that and changes that into positive. I want to speak to kids and let them know that it's more opportunities. Even though we come from very, very little, you are still able to do what you desire to do.

THE COURT: All right. Well, I'm going to let

Mr. D'Agrosa speak now.

THE DEFENDANT: Thank you, sir.

MR. D'AGROSA: Your Honor, the United States has set forth its position in its Sentencing Memorandum, which reflects the Presentence Report which is un-objected to. The drug quantity is agreed upon. His criminal history is what it is because he committed armed robberies when he was a teenager, and he committed further crimes in his mid-20's when he was caught with guns as a previously convicted felon, and one of those, because it was an armed robbery, was an aggravated felony.

I hear what Mr. Jordan is saying and what his lawyer is saying here today. However, his criminal livelihood began when he was a teenager, continued into his 20's, and then, while on probation or parole in his early thirties, he's involved in a major methamphetamine distribution network that stretched from California right here to the Midwest.

His involvement in that is set forth in the Stipulation of Facts. It's set forth in the PSR. His relative involvement in this conspiracy is all set forth. It shows a criminal livelihood which, while he may have two jobs now and work hard for his family, when they kicked in his door and executed a search warrant towards the end of this investigation, he had $129,000 in U.S. currency which he earned from the sale of narcotics.

It's a dangerous business. It's a violent business.

And Mr. Jordan needs to accept the responsibility for his conduct, which according to the Advisory Guidelines, based upon his criminal history, which he has control over and had control over throughout his life, is 235 to 293 months.

I don't believe a variance is appropriate in this case. This is not aberrant behavior. This is just continuing his criminal conduct as an adult, well after his teenage years.

I've argued for a sentence within that Guideline range, which is appropriate. I don't believe his criminal history overstates anything, Your Honor. I think it's an accurate statement of his criminal livelihood, and we believe a Guideline sentence is appropriate in this case.

Thank you, Judge.

THE COURT: After hearing from both counsel and the Defendant and reviewing the Presentence Report, Defendant's Sentencing Memorandum, Defendant's letter and the Defendant's mother's letter, as well as the Government's Sentencing Memorandum, the Court is now ready to proceed with the imposition of sentence.

The instant offense involved a conspiracy between Dedrick Jordan and others to distribute methamphetamine and other controlled substances in the Eastern District of Missouri and elsewhere. Jordan acted as a source of supply for methamphetamine and often oversaw drug shipments to the carriers.

Jordan's criminal history began at an early age, and by 14 he was adjudicated delinquent. At ages 15 and 16 he committed two robberies which categorized him as a Career Offender. In addition, the Defendant incurred convictions for being a Felon in Possession of a Firearm and Possession of a Firearm with Prior Violent Convictions. Now, at age 35, Jordan is facing a significant term of incarceration.

The Defendant was reportedly raised by his mother and she struggled to financially support the Defendant. Due to the Defendant's involvement in criminal activity at a young age, he spent much of his early teenage years and young adulthood in juvenile detention in the California Department of Corrections and Rehabilitation.

As such, in light of the Advisory Guidelines range and the provisions of 18 U.S.C. § 3553(a), a sentence of 235 months imprisonment, which represents a Guideline sentence, I believe would be sufficient but not greater than necessary to comply with the purposes set forth in 18 U.S.C. § 3553(a).

Pursuant to the Sentencing Reform Act of 1984 and the provisions of 18 U.S.C. § 3553(a), it is the judgment of the Court that the Defendant, Dedrick Deshon Jordan, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 235 months.

While in the custody of the Bureau of Prisons it is recommended the Defendant be evaluated for participation in the

Residential Drug Abuse Program. It is also recommended the Defendant be evaluated for participation in an occupational educational program. Such recommendations are made to the extent they are consistent with the Bureau of Prisons policies.

Upon release from imprisonment, the Defendant shall be placed on supervised release for a term of four years. Within 72 hours of release from the custody of the Bureau of Prisons, the Defendant shall report in-person to the probation office in the district to which Defendant is released.

As part of your supervision, you must comply with the standard conditions of supervision that have been adopted by this Court. You must also comply with the following additional special conditions. If it is determined there are costs associated with any services provided, you shall pay those costs based on a copayment fee established by the probation office.

You must submit to substance abuse testing to determine if you've used a prohibited substance. You must not attempt to obstruct or tamper with the testing methods.

You must participate in a substance abuse treatment program and follow the rules and regulations of that program. The probation officer will supervise your participation in the program.

You must submit your person, property, house, residence, vehicles, papers, computers, other electronic communications, or data storage devices, or media, or office to

a physical or electronic search conducted by a United States probation officer. You must warn any other occupants that the premises may be subject to searches pursuant to this condition.

The probation officer may conduct a search under this condition only when reasonable suspicion exists that you have violated a condition of supervision and that the areas to be searched contain evidence of this violation.

The Court finds that the Defendant does not have the ability to pay a fine. It is further ordered that the Defendant shall pay to the United States a special assessment of $100, which shall be due immediately.

Mr. Jordan, do you have any questions about any of those conditions of supervision?

THE DEFENDANT: No, sir.

THE COURT: I must now advise you that it is your right to file a Notice of Appeal from this sentence within 14 days from today. Failure to do so within that time period shall be deemed a waiver of your right to appeal.

You need to speak with Mr. Hogan about that as soon as possible. Understood?

THE DEFENDANT: Yes, sir.

THE COURT: Does either party now have any objections to the Court's Findings of Fact and Conclusions of Law, or to the manner in which this sentence was pronounced?

MR. D'AGROSA: No, Your Honor.

MR. HOGAN: No, Your Honor.

THE COURT: The sentence will be imposed as stated.

Mr. D'Agrosa, do you have a motion as to Count Seven?

MR. D'AGROSA: The Government moves to dismiss Count Seven, Your Honor.

THE COURT: Count Seven is dismissed.

Is there anything else from the Government, Mr. D'Agrosa?

MR. D'AGROSA: No, Your Honor.

THE COURT: Mr. D'Agrosa, do you have a position on whether or not Mr. Jordan can continue on Pretrial Release until he reports, or should he be detained?

MR. D'AGROSA: I don't know.

Mr. Hogan, are you asking for voluntary surrender?

MR. HOGAN: I'd ask for voluntary surrender, Your Honor.

MR. D'AGROSA: Judge, I usually defer to Pretrial in these matters. I don't know ...

THE COURT: Pretrial is not opposed to continuing him on supervision until he reports.

MR. D'AGROSA: Then I'm not going to object to that, Your Honor.

THE COURT: All right. Well, Mr. Jordan, you'll self-report when you are contacted by the U.S. Marshal and they'll tell you what BOP you need to go to.

THE DEFENDANT: Yes, sir.

THE COURT: Is there anything else from the Government?

MR. D'AGROSA: No, Your Honor. Thank you.

THE COURT: Mr. Hogan?

MR. HOGAN: Yes, Your Honor. I believe the Court has already made a finding that you're going to recommend the RDAP program?

THE DEFENDANT: Yes.

MR. HOGAN: Your Honor, I'm also recommending -- my client is a resident of Los Angeles, California -- that the Court make a recommendation that he be housed in a facility as close to Los Angeles, California, as practical.

THE COURT: If it is consistent with the policies of the Bureau of Prisons, the Court recommends that Mr. Jordan be housed in a facility as close as possible to Los Angeles, California.

MR. HOGAN: Thank you, Your Honor.

THE COURT: That will conclude this hearing.

- RECESS AT 11:54 A.M. -

- REPORTER'S CERTIFICATE -

I, Linda C. Nichols, Registered Diplomate Reporter and Certified Realtime Reporter, do hereby certify that I am a duly appointed Official Court Reporter for the United States District Court, Eastern District of Missouri, and that the foregoing is a true and accurate reproduction of the Sentencing hearing on March 26th, 2024, in the matter of:

UNITED STATES OF AMERICA

vs.

DEDRICK DESHON JORDAN

Case Number 4:21-CR-00013-RLW-3

I further certify that this transcript consists of pp. 1-17 inclusive.

Dated: April 5th, 2024.

\s\ Linda Nichols

Linda Nichols, RDR, CRR
Official Court Reporter
United States District Court
Eastern District of Missouri