# Exhibit B

Court of Appeal, Second Appellate District
Daniel P. Potter, Clerk
Electronically FILED on 2/14/2019 by L. Denyse Alexander, Deputy Clerk

Filed 2/14/19

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

THE PEOPLE,

Plaintiff and Respondent,

v.

DEDRICK JORDAN,

Defendant and Appellant.

B280325

(Los Angeles County Super. Ct. No. BA443982)

APPEAL from a judgment of the Superior Court of Los Angeles County, Bernie C. La Forteza, Judge. Reversed.

Brian C. McComas, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, and Scott A. Taryle and Viet H. Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

______________________________

Appellant Dedrick Jordan appeals from his judgment of conviction of one count of possession of a firearm by a felon (Pen. Code,[1] § 29800, subd. (a)(1)) and one count of possession of a firearm with a prior violent felony conviction (§ 29900, subd. (a)(1)). Among other arguments, Jordan asserts the evidence at trial was insufficient to support each of his convictions. We agree that there was no substantial evidence to support a finding that Jordan had actual or constructive possession of a firearm, and on that basis, reverse his judgment of conviction.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I. The Charges

In a two-count information, the Los Angeles County District Attorney charged Jordan with possession of a firearm by a felon (§ 29800, subd. (a)(1)) [count one], and possession of a firearm after being convicted of a violent offense (§ 29900, subd. (a)(1)) [count two]. It also was alleged that Jordan had suffered two prior serious or violent felony convictions within the meaning of the "Three Strikes" law (§§ 667, subd. (b)-(j), 1170.12), and had served two prior prison terms (§ 667.5, subd. (b)). Jordan pleaded not guilty to each count and denied the enhancement allegations.

### II. The Prosecution's Evidence

On February 8, 2016, at approximately 11:00 p.m., Los Angeles Police Officers Bryan Schilling and Lance Hill were on patrol in the residential area of 81st Street and Stanford Avenue in South Central Los Angeles. The area had a high crime rate, including a number of recent shootings. The officers were in a

---

1 All further statutory references are to the Penal Code.

black and white Crown Victoria equipped with light bars in the front and rear windshields and spotlights on the sides. Officer Hill was driving the vehicle and Officer Schilling was in the front passenger seat.

As the officers were heading southbound on Stanford Avenue, they observed Jordan jog or run across the street from the west curb to the east curb. Jordan did not make any unusual movements as he was crossing the street, and there was no indication that he saw the officers at that time. Jordan then began walking southbound on Stanford Avenue toward 81st Street. Jordan walked at a casual pace on the sidewalk closer to the curb, and did not look in the officers' direction as they drove behind him. The officers did not observe Jordan holding anything in his hands.

As Jordan was walking southbound on Stanford Avenue, the officers saw him duck down for two to four seconds behind a silver Hyundai that was parked along the east curb. Jordan was about a half a block away from the officers when he ducked down. Jordan then stood up and continued walking at a normal pace on Stanford Avenue toward 81st Street. The officers could not see what Jordan was doing when he ducked behind the silver car because their view was blocked by the line of cars that were parked along the curb. However, the officers considered Jordan's act of ducking behind a car to be suspicious, and decided to make contact with him.

The officers stopped their vehicle near the northeast corner of Stanford Avenue and 81st Street. From their vehicle, Officer Hill asked Jordan if they could talk with him, and Officer Schilling asked Jordan if he was on parole or probation. When Jordan responded that he was on probation, both officers exited

their vehicle. Jordan was calm and cooperative with the officers, and made no attempt to flee. While Officer Hill searched Jordan for weapons, Officer Schilling walked toward the area where they had observed him ducking behind a car. Officer Schilling found a loaded nine-millimeter semi-automatic handgun on the ground between the curb and the silver Hyundai. Officer Schilling could not tell how long the gun had been in that location.

After Officer Schilling found the gun, Officer Hill detained Jordan and placed him in handcuffs. Jordan did not have any weapons, ammunition, or contraband on his person, nor was he in possession of any gloves or other type of cloth that could be used to wipe fingerprints. Jordan did not make any statements to the officers once he was detained, but he continued to be "very polite" and "very cooperative" throughout his contact with them.

While Jordan was being detained, his mother and girlfriend arrived on the scene. Both women appeared to be upset. After Officer Schilling learned that Jordan's girlfriend lived on the same block where Jordan had been detained, he walked to the girlfriend's residence and took a photograph of the front yard. No one told the officers that there might be surveillance video of the incident, and they did not check with any residents in the nearby area to see if such footage existed.

The police did not find any evidence connecting Jordan to the silver Hyundai that was parked along the curb where the gun was found. The police were unable to trace the gun through a firearms database system because holes had been drilled through the serial number. The gun was tested for fingerprints in July 2016 shortly before trial, but no latent prints were recovered. At trial, the forensic print specialist who processed the gun testified that, of the approximately 1,000 firearms that he had tested for

prints, he was able to recover a latent print from only 10 to 15 percent of the firearms.

## III. Defense Evidence

Carolyn Cooks, Jordan's mother, lived about a half a block from the location where Jordan was arrested. Prior to the arrest, Cooks had been concerned about Jordan's safety because there had been a number of recent shootings in the neighborhood. Earlier that evening, Cooks also had seen many other people on the street. Cooks learned of Jordan's arrest from his girlfriend, who lived nearby. When Cooks went to the corner of 81st Street and Stanford Avenue, she saw Jordan in handcuffs surrounded by the police. Cooks spoke with a sergeant, who asked her some questions about Jordan. Cooks told the sergeant that Jordan was on probation and resided with her in the area.

Lupita Valenzuela, Jordan's girlfriend, lived on Stanford Avenue, across the street from the location where Jordan was arrested. On the night of the arrest, Jordan visited Valenzuela at her home after he got out of work. When Jordan left her home, Valenzuela went outside to watch Jordan walk to his nearby home because the neighborhood was dangerous. From the front of her house, Valenzuela saw Jordan cross Stanford Avenue and then walk on the sidewalk toward 81st Street. As Jordan was approaching the corner of Stanford Avenue and 81st Street, a police car sped down the street and stopped at the corner. The officers immediately exited the car, handcuffed Jordan, and patted him down. Valenzuela approached the officers when she saw Jordan being handcuffed, but they ordered her to back up. She complied, and then went to get Jordan's mother. Valenzuela never lost sight of Jordan from the time he left her house to the

time he was stopped by the police, and she never saw him duck behind a car.

Valenzuela's home was equipped with a video surveillance camera, which recorded some of Jordan's interaction with the officers. Valenzuela gave the video recording to Jordan's counsel, but did not provide a copy to the police. At trial, the 48-second video was played for the jury. The video, which was of poor quality, started at the point of contact between Jordan and the officers, and did not capture Jordan crossing Stanford Avenue or ducking behind a parked car. Instead, it showed a police car driving by Jordan before stopping in front of him at a corner. Two officers then immediately exited the vehicle. Jordan walked toward the officers and made contact with them near their car. One of the officers appeared to pat down Jordan while the other stood nearby. The other officer then walked toward the area where Jordan had come from, and appeared to illuminate the area with a flashlight.

At trial, the parties stipulated that Jordan had a prior felony conviction, which constituted a qualifying offense for the purpose of counts one and two.

## IV. Verdict and Sentencing

The jury found Jordan guilty as charged of counts one and two. In a bifurcated proceeding, the trial court found true the allegations that Jordan had two prior serious or violent felony convictions pursuant to the Three Strikes law, and had served two prior prison terms pursuant to section 667.5, subdivision (b). Jordan was sentenced to a total term of six years in state prison.

## DISCUSSION

Among other claims raised on appeal, Jordan challenges the sufficiency of the evidence supporting his conviction in count one for possession of a firearm by a felon (§ 29800, subd. (a)(1)), and his conviction in count two for possession of a firearm after being convicted of a violent felony offense (§ 29900, subd. (a)(1)). Jordan does not dispute that he had a qualifying prior conviction for the purpose of both counts. Rather, Jordan contends that, as to each count, the evidence was insufficient to support a finding that he was in possession of a firearm.

### I. Standard of Review

"""When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.] We determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.] In so doing, a reviewing court "presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence."' [Citation]" (*People v. Rangel* (2016) 62 Cal.4th 1192, 1212-1213.) """The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence. [Citation.]""" (*People v. Tully* (2012) 54 Cal.4th 952, 1006.)

## II. The Evidence Was Insufficient to Support Jordan's Convictions for Unlawful Possession of a Firearm

Section 29800, subdivision (a)(1) states that "[a]ny person who has been convicted of . . . a felony under the laws of the United States, the State of California, or any other state, . . . and who owns, purchases, receives, or has in possession or under custody or control any firearm is guilty of a felony." Section 29900, subdivision (a)(1) provides that, "[n]otwithstanding subdivision (a) of Section 29800, any person who has been previously convicted of any of the offenses listed in Section 29905 and who owns or has in possession or under custody or control any firearm is guilty of a felony." Thus, as relevant here, the essential elements of a violation section 29800, subdivision (a)(1) and section 29900, subdivision (a)(1) are that a person, who previously was convicted of a qualifying offense, had in his or her possession or under his or her custody or control any firearm.

"To 'possess' a firearm means 'having """actual control, care and management of""" the firearm. [Citations.]" (*In re Charles G.* (2017) 14 Cal.App.5th 945, 951.) Possession of a firearm "may be proven circumstantially, and possession for even a limited time and purpose may be sufficient." (*In re Daniel G.* (2004) 120 Cal.App.4th 824, 831.) Moreover, "[p]ossession may be actual or constructive. Actual possession means the object is in the defendant's immediate possession or control. A defendant has actual possession when he himself has the weapon. Constructive possession means the object is not in the defendant's physical possession, but the defendant knowingly exercises control or the right to control the object. [Citation.]" (*Ibid.*) "To establish constructive possession, the prosecution must prove a defendant knowingly exercised a right to control the prohibited item, either

directly or through another person. [Citations.] Possession may be shared with others. [Citation.] But mere proximity to the weapon, standing alone, is not sufficient evidence of possession. [Citation.]" (*People v. Sifuentes* (2011) 195 Cal.App.4th 1410, 1417, disapproved on another ground in *People v. Farwell* (2018) 5 Cal.5th 295, 304, fn. 6; see also *People v. Elder* (2014) 227 Cal.App.4th 1308, 1313 ["conviction for possession of a gun must be based on intentional actual or constructive possession of the gun [citation], not merely walking nearby"].)

In this case, there was no direct evidence that Jordan had actual or constructive possession of a firearm. No fingerprints were recovered from the gun that was found by the police, and no evidence connected Jordan to the car that was parked along the curb near where the gun was found. Additionally, both Officer Schilling and Officer Hill testified at trial that they never saw Jordan holding a gun or any other object in his hands. The officers also testified that they did not find any weapons or ammunition when they conducted a search of Jordan's person. Instead, the prosecution's case against Jordan was based entirely on circumstantial evidence. The prosecution's theory was that Jordan had the gun on his person when he saw a police vehicle in the immediate vicinity, and that, in response to the presence of the police, he ducked behind a parked car and discarded the gun between the car and the curb. While possession of a firearm may be proven circumstantially, the totality of evidence presented by the prosecution was insufficient to support Jordan's convictions.

The only evidence offered to support a finding that Jordan had possession of a gun was the officers' testimony that Jordan ducked behind a silver Hyundai for two to four seconds as he was walking down a residential street, and that a gun was found in

the street shortly thereafter between the car and the curb. Both Officer Schilling and Officer Hill admitted, however, that they could not see what Jordan was doing when he briefly ducked down because their view was blocked by the line of cars parked along the street. Neither officer ever observed Jordan holding anything in his hands or making any movement with his hands that might support an inference that he was discarding a gun.

Furthermore, none of Jordan's actions before he ducked down or after he stood up indicated that he was aware of the presence of the police until they initiated contact with him. Both officers testified that, when they first saw Jordan from their patrol car, he was crossing Stanford Avenue in a normal manner. Jordan did not look at the officers, change his demeanor, or display any suspicious behavior as he was crossing the street. After Jordan crossed the street, he began walking southbound on Stanford Avenue at a casual pace. He never looked in the direction of the officers before he made the ducking motion or after he stood up. Instead, Jordan continued walking down the street at a normal pace, and then stopped at the corner when the officers pulled up in their vehicle and made contact with him.

Jordan's actions after he was stopped by the police also did not support an inference that he had been in possession of a gun moments earlier. Jordan made no effort to flee when the officers drove by and then abruptly stopped their vehicle in front of him. Jordan calmly approached the officers, answered their questions, and admitted that he was on probation. The officers did not ask Jordan about the gun after they found it, and Jordan did not make any statements once he was handcuffed. However, Jordan continued to be polite and cooperative throughout the detention.

Accordingly, while the evidence showed that Jordan was in close proximity to the gun when he momentarily ducked down behind the Hyundai, it failed to establish that the gun was ever in his custody or control. The evidence also failed to support an inference that Jordan had control over the place where the gun was found. The police did not find the gun inside a residence, a vehicle, or any other location over which a jury reasonably could infer Jordan had dominion and control. Instead, the gun was found on a public street in a well-populated residential area where there was a high rate of crime and frequent shootings.

For this reason, the cases on which the Attorney General relies are inapposite. In each of those cases, a firearm was either found inside a car, or was observed being thrown from a car, in which the defendant was the driver or passenger. Because the defendant's presence in the car and surrounding circumstances supported an inference that he had control over the weapon, the evidence was sufficient to support his conviction for unlawful possession of a firearm. (See *People v. Miranda* (2011) 192 Cal.App.4th 398, 411 [where defendant was present in the car during a police chase as pieces of a shotgun were being thrown from the car, a jury "could infer that defendant had at least joint dominion and control over the shotgun before it was tossed out of the car window"]; *People v. Padilla* (2002) 98 Cal.App.4th 127, 135 [where appellant was seen stuffing an object into the seat of the car during a traffic stop, the officers' description of "motions by appellant support[ed] the reasonable inference that [he] was the initial possessor who withdrew the gun from his front pocket or waistband before concealing it between the seats"]; *People v. Llamas* (1997) 51 Cal.App.4th 1729, 1743 [where gun was found under the hood of a car in appellant's possession, the "jury could

reasonably believe that when appellant was seen momentarily opening the hood, he was doing so either to make sure the gun was still present or that he was placing the gun in that location"]; *People v. Taylor* (1984) 151 Cal.App.3d 432, 436 [where appellant was the driver of a car during a high-speed chase and police saw a gun being thrown from the passenger window, trier of fact could find appellant had constructive possession of the gun because his "driving represented an unequivocal attempt to avoid capture"].)

The Attorney General argues the evidence was sufficient to support a finding that Jordan had constructive possession of the gun based on Jordan's behavior before the gun was found. The Attorney General notes that the officers saw Jordan "by himself," and that Jordan then ran or jogged across the street, which "could be interpreted as evasive conduct after seeing the patrol car." As discussed, however, both officers testified that Jordan's conduct in crossing the street was not in any way odd, and that Jordan never looked in their direction until they initiated contact with him. The mere fact that Jordan was by himself in a neighborhood in which he lived does not support an inference that he was involved in any unlawful activity. The Attorney General also notes that it "would be an incredible coincidence" for a loaded firearm to be found near the same spot where Jordan had ducked down moments earlier, and that "the prospect that another, unknown person left the gun there at a different time is implausible." It is possible that Jordan could have discarded a gun when he briefly ducked down near the spot where the gun was found by the police a few minutes later. However, no witness testified that they ever saw Jordan carrying a gun or any other object, or making any motion with his hands that was consistent with him discarding an object on the street. The mere possibility

that Jordan might have discarded the gun does not by itself provide a basis to infer that he did take such action, and therefore, is not sufficient to support a finding that he had constructive possession of the gun. (See *People v. Sifuentes*, *supra*, 195 Cal.App.4th at p. 1419 ["The possibility [the defendant] might have had the right to exercise control over the gun does not by itself provide a basis to infer he had the right to control it."]; *People v. Moore* (2011) 51 Cal.4th 386, 406 ["That an event *could* have happened . . . does not by itself support a deduction or inference it did happen."].)

While a reviewing court must accept logical inferences that the jury might have drawn from circumstantial evidence, """[a] reasonable inference . . . 'may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work. [¶] . . . A finding of fact must be an inference drawn from evidence rather than . . . a mere speculation as to probabilities without evidence."' [Citations.]' [Citation.]" (*People v. Sifuentes*, *supra*, 195 Cal.App.4th at pp. 1416-1417.) Here, the evidence showed that Jordan momentarily ducked down while walking at a normal pace on a residential street near his home, and that he did not exhibit any suspicious behavior either before or after taking that brief action. If the evidence had shown that Jordan was carrying a gun or other object, that he was aware of the nearby presence of the police, or that he made any type of furtive movement with his hands, then the jury reasonably could have inferred that Jordan had constructive possession of the gun that was found on the street near where he had ducked down. In the absence of any such evidence, however, it would be unreasonable to infer that Jordan possessed the gun solely because he made a brief ducking motion as he was walking home.

Such speculation does not constitute substantial evidence. (See *People v. Waidla* (2000) 22 Cal.4th 690, 735 ["'speculation is not evidence, less still substantial evidence'"].) Because there was no substantial evidence to support a finding that Jordan had actual or constructive possession of a firearm, his convictions in count one and count two must be reversed.[2]

## DISPOSITION

The judgment of conviction is reversed.

ZELON, Acting P. J.

We concur:

SEGAL, J.

FEUER, J.

---

[2] In light of our conclusion that Jordan's convictions must be reversed for lack of sufficient evidence, we need not address his remaining arguments on appeal.